(50 App. Div. 610.)

### O'CONNOR et al. v. DOCEN et al.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

**1. INSOLVENCY—CONVEYANCE TO CREDITOR—CONSIDERATION.**

Where a debtor conveys property incumbered for $14,545.50 to a creditor in payment of a bona fide debt of $1,500, which property previous to the conveyance had been unsuccessfully offered for sale for $12,500, the consideration is not inadequate.

**2. SAME—BONA FIDES.**

Where a creditor, to whom property is conveyed in payment of a bona fide debt, about a year after the conveyance demands, as a condition of selling such property to an unsecured creditor, that he be reimbursed for expenses incident to the transfer, including a loan later made to the debtor, and attorney's fees necessitated by proceedings brought by the unsecured debtor with relation to the property so conveyed, it does not indicate that the original conveyance was fraudulent.

**8. SAME—ADMISSION—SUFFICIENCY.**

Where plaintiff seeks to set aside, as fraudulent, a conveyance made by his debtor to another creditor, an admission of an indebtedness to plaintiff by the debtor, made after the execution of the conveyance, is not sufficient evidence to establish the fact of plaintiff's claim.

Goodrich, P. J., dissenting.

Appeal from special term, New York county.

Action by Thomas G. O'Connor and another against Charles H. Docen and others to set aside, as fraudulent, a conveyance. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Richard O'Gorman, for appellants.
George Hahn, for respondents.

HIRSCHBERG, J. The plaintiffs sue as creditors of the defendant Docen, and have secured a judgment setting aside, as fraudulent, a conveyance of real estate made by him to the defendant Herman H. Kipp on October 2, 1897. This result is based on a finding that the deed was executed and accepted with the intent of defrauding Docen's creditors. We find no evidence justifying this finding. At the time of the execution of the deed, Kipp was a creditor of Docen, in the sum of $1,500, for money loaned, and the latter was anxious to pay or secure him. Kipp learned that Docen was in financial straits, and called on him, with a view of ascertaining whether his claim could be collected, and Docen then proposed to give him the property in question for that purpose. After some demur, Kipp agreed to take the property, and the deed was accordingly executed and delivered. The property was then incumbered with mortgages amounting to $12,500, and there was unpaid inter-

est, taxes, and water rents amounting to $545.50, so that, with his claim, the real estate then represented to Kipp the sum of $14,545.50. It is proper to add that at that time Docen was threatened by creditors with legal proceedings, and his real estate in New Jersey had been attached; and a transfer of his business made to another creditor, but on the same day as the deed to Kipp, is assailed as fraudulent. The bona fides of Kipp's debt, however, is not disputed, and, if its payment by a transfer of the real estate was made in good faith, that transfer is not affected by these contemporaneous transactions, with which it is not claimed that Kipp had any connection. There was no inadequacy of consideration,—certainly none which would serve to suggest fraud. The plaintiffs did, indeed, give evidence tending to show that the property was worth about $16,000, and this was met by evidence on the part of the defendants that it was worth less than the amount at which it had been taken by Kipp. But it was undisputed that the house was very old and in poor condition, and that prior to the conveyance it had been offered in the market for sale at $12,500, but that no purchaser could be secured at that price. The property had been purchased by Docen for less than the sum at which he transferred it to Kipp, and, under all the circumstances, it cannot be said that the debtor parted with it for anything less than its fair and reasonable value.

On the trial, Docen, who since the transfer had become hostile, or at least unfriendly, to Kipp, testified that at the time of the conveyance it was agreed between them that when Kipp sold the property he would pay to Docen whatever he received over and above his claim, in order that Docen might use such surplus in paying his other creditors. This Kipp positively denied. He testified, in effect, that he took the real estate in payment of his claims, and that nothing was said about his selling the property and accounting for the proceeds or turning over the surplus to Docen, or for the benefit of his creditors, in any way. Some months after Kipp acquired the property, he advanced or loaned for the use and benefit of Docen the sum of $250, taking the promissory note of Docen's wife as security, and this money had not been repaid in December, 1898. Meanwhile he had been repeatedly examined in supplementary proceedings at the instance of a creditor of Docen named Klatzl, and he had also been sued in relation to the property by Sonn Bros., the precise object of which action is not disclosed, but which action was subsequently discontinued. Kipp's attorney testified that the legal services rendered by him to Kipp in relation to the property subsequent to the purchase, including the action of Sonn Bros. and the supplementary proceedings, were worth $750, and this evidence was wholly undisputed. It was the conduct of Kipp in reference to these two items, viz. the $250 loan on Mrs. Docen's credit, and the charge of $750 for legal services, on the occasion of a proposition made by Klatzl in December, 1898, on which the learned trial justice chiefly, if not solely, founds his conclusion that the original sale or transfer to Kipp was fraudulent. It appears that in the month of December, 1898, Klatzl made a proposition to Kipp to take a deed of the property at a valuation of about $15,000; such sum to cover the in-

cumbrances, and Kipp's claims and expenditures in relation to the property. Kipp was entirely willing to dispose of the property on those terms, desiring only to be made whole in the transaction, and Klatzl was accordingly referred by him to his lawyer for the items in question. In response to Klatzl's application, the lawyer wrote him a letter, stating in detail the amount of the claims, incumbrances, interest, taxes, and arrearages for water rents, then amounting in all to the sum of $15,632, including the money loaned on Mrs. Docen's note and the charge for legal services. Klatzl objected to the last two items, and the property was accordingly not conveyed to him. In the opinion of the learned trial justice, it clearly appears that he was largely influenced, if not controlled, in his determination of the case, by this refusal of Kipp to transfer the property to Klatzl on the latter's terms. He says:

"There is very strong proof of bad faith, where a fortunate creditor has secured property of the insolvent debtor, and then refuses to surrender it to another creditor unless such other creditor will pay his attorney a large sum, and, besides that, reimburse him for a loan he has made to the wife of the debtor. Such conduct plainly shows (1) that the original claim was an inadequate consideration for the property received; (2) that the creditor in possession is not willing to deal fairly by other creditors, and be satisfied with receiving his own demand in full; and (3) that he seeks by the transaction to secure to the debtor or his family an unwarranted benefit out of the property at the expense of the other creditors."

We do not regard this statement of the learned court as a correct view of the law, or as a legitimate deduction from the undisputed facts. There is no pretense that the debt which Docen owed Kipp was not genuine, and it cannot be successfully claimed that Docen could not lawfully pay it by a deed of the property, tendered and received in good faith. As has been shown, the case is bare of evidence of bad faith in the original transaction, and, if such be found, it must be found solely in the price which more than a year afterwards Kipp demanded as a condition of transferring the property to Klatzl. While it may be true that the intent of parties in a given transaction may be gathered in part from their subsequent conduct, so far as such conduct tends to throw light upon it, it seems, clear to us that the mere fact that a creditor, who has been secured or paid by a legitimate transfer of property, requires that he be fully reimbursed for all expenses and advances incident to the transfer, as a condition of selling such property long afterwards to another creditor, in no degree tends to indicate the existence of a fraudulent intent in the original transaction. Even if it be assumed that Kipp's behavior was illiberal and ungenerous,—which, of course, we do not assert,—yet the proposition is without authority in law that a conveyance of real estate, valid in its inception, may be successfully impeached because of a subsequently exhibited manifestation of rapacity on the part of the grantee.

As a new trial will be granted, we deem it proper to call attention to the fact that it is at least very questionable whether, on the proof furnished by the record, the plaintiffs have established such a status as creditors as entitles them to maintain this action. They obtained a judgment against Docen by confession on the 15th day of

November, 1898. Although Docen testified on the trial that at the time of the transfer in question he was indebted to "O'Connor" in the sum of over $1,800, there is no proof that the plaintiffs were the parties referred to, and no proof that the judgment obtained by the plaintiffs by confession was for such indebtedness. In other words, there is no proof in the case, aside from the confession of judgment itself, that the indebtedness alleged in such confession was genuine. It would seem that, for the purposes of this action, such a confession would have no greater force than an admission made by the grantor (Docen) after the grant, and which, of course, would not be binding upon his grantee. We think there should be some evidence tending to prove that the defendant Docen was indebted to the plaintiffs, other than his admission or confession made after the execution of the deed, in order to legally establish their position as creditors entitled to maintain an action to set aside the transfer as fraudulent.

The judgment must be reversed.

BARTLETT, HATCH, and WOODWARD, JJ., concur.

GOODRICH, P. J. (dissenting). The Revised Statutes (volume 2 [9th Ed.] p. 1888, § 4) provide that the question of fraudulent intent shall be a question of fact, and not of law, in all cases arising as to conveyances executed with intent to hinder, delay, or defraud creditors, and that no such conveyance shall be adjudged fraudulent, as against creditors, solely on the ground that it was not founded on a valuable consideration. There was evidence tending to show the following facts: Docen was insolvent on the day of his execution of the deed in question. At the same time he transferred his business, by bill of sale, to one Lindemann, without consideration. A farm of his in New Jersey had been attached by creditors. Other creditors were threatening legal proceedings. These facts were known to Kipp. Docen was indebted to Kipp on a note for $1,200, dated January, 1897, and on I O U's given for borrowed money, amounting in all to about $1,500. Of his own motion, he went to Kipp and offered to convey the house to him. He testified:

"I told him I wanted to sign over the house, because I owed him $1,200 that he loaned me in cash. * * * He told me that when he sold the house he would give me back what the house is worth, and I can then pay the wholesalers. * * * I said I wanted this money for the creditors."

After this the deed was executed.

There were on the premises in question mortgages of $12,500, which, with arrearages of interest and taxes, amounted in all to about $13,000. The plaintiffs gave evidence that the value of the premises was $16,000. Klatzl, another creditor, to the amount of $800, in December, 1898, requested Kipp to convey the premises to him, and offered to pay him about $15,000, to represent what the property had cost him, and was referred by Kipp to his attorney, who made up a statement of sums which Kipp had loaned to or paid for Docen; the total amount being $15,632. One of the items

was, "Legal expenses, $750." Another item was for $250 said by Kipp to have been loaned to Mrs. Docen after the deed, and for which she had given her note. Klatzl refused to pay the amount demanded, and no deed was ever given by Kipp. Kipp denied making any promise to Docen to return him anything whatever when he might sell the property, either for the payment of other creditors or for himself, and denied any fraudulent intent, or that there was anything said by Docen about taking the property in order to delay creditors, but admitted loaning to Mrs. Docen the $250 some time after the deed. There was also evidence contradicting Docen's transfer of his business to Lindemann without consideration; the latter testifying that it was in payment of Docen's indebtedness to him for services as clerk, extending through a period of five or six years. The defendant Kipp also produced evidence that the premises were worth only $14,000. Upon this conflicting evidence, a question of fraudulent intent arose, which the statute declares to be a question of fact; and, as such, it was properly decided by the court, on evidence sufficient to support his adjudication, that "said deed was executed and delivered * * * with the intent to hinder, delay, and defraud the creditors of the said defendant Charles Docen, including the plaintiffs herein." The court also adjudged that Kipp "claims to own the said premises by virtue of the said pretended conveyance, collusively given to and accepted by the defendant Herman H. Kipp as aforesaid." With such adjudication I see no reason to interfere, and think the judgment should be affirmed.